O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HOWARD K. KANEHE,                ) No. EDCV 08-369 DDP (FFM)
                                 )
              Petitioner,        ) **ORDER DENYING PETITION FOR WRIT**
                                 ) **OF HABEAS CORPUS**
     v.                          )
                                 )
JAMES E. TILTON, Warden,         )
                                 )
              Respondent.        )
_____)

## I.  PROCEEDINGS

     Petitioner Howard K. Kanehe, a state prisoner in the
custody of the California Department of Corrections and
Rehabilitation, filed a Petition for Writ of Habeas Corpus
Pursuant to 28 U.S.C. § 2254 (the "Petition" or "Pet.") on March
18, 2008.  Respondent filed an answer to the Petition on July 2,
2008, after obtaining an extension of time in which to do so.
(*See* June 4, 2008 Order at 1.)  Petitioner filed a traverse
("Trav.") on August 27, 2008, after obtaining an extension of
time in which to do so.  (*See* August 13, 2008 Order at 1.)

     Pursuant to 28 U.S.C. § 636, the court has reviewed the
Petition, all the relevant records and files, and the Report and

Recommendation of the United States Magistrate Judge. Objections to the Report and Recommendation have been filed. Having made a de novo determination of those portions of the Report and Recommendation to which objections have been made, the court concurs with the majority of the Magistrate Judge's findings, conclusions, and recommendations.  Accordingly, the court adopts the following order, which is drawn largely from the Report and Recommendation.

## II.  PROCEDURAL HISTORY

On November 6, 2003, a Riverside County Superior Court found petitioner guilty of 10 counts of lewd and lascivious conduct with a child under the age of 14 by force, duress, or menace (Cal. Penal Code § 288(b)(1)).  As to each count, the court found that the requirements of California Penal Code section 803(g)(1) (2003) were met.  (Clerk's Transcript ("CT") 184-85; Reporter's Transcript ("RT") 76.)  On December 4, 2003, the trial court sentenced petitioner to 10 consecutive terms of three years each, for a total prison term of 30 years.  (CT 223-24; RT 89-90.)

Petitioner appealed his conviction and sentence in the California Court of Appeal.  (Lodg. Nos. 3, 5.)  On July 13, 2004, the Court of Appeal found that there was insufficient evidence of force, fear, or duress.  The court modified the judgment to reflect convictions of the lesser included offense of violating California Penal Code section 288(a).  The court remanded the case for resentencing.  (Lodg. No. 6 at 10-11.)  On November 12, 2004, the trial court resentenced petitioner to three years on Count One and two years on the remaining counts,

2

for a total prison term of 21 years.  (Lodg. No. 7 at 4-5; Lodg. No. 8 at 28-29.)

Petitioner appealed his sentence in the California Court of Appeal, claiming, *inter alia*, that his rights to due process, to a jury trial, and to the effective assistance of counsel were violated.  (Lodg. No. 9.)  He raised slightly different ineffective assistance grounds in a petition for writ of habeas corpus before the same court.  (Lodg. No. 12.)  On June 30, 2006, the Court of Appeals rejected petitioner's claims on direct review and on habeas review and affirmed the judgment.  (Lodg. No. 11.)

Petitioner filed a petition for review of the Court of Appeal's decision in the California Supreme Court.  (Lodg. No. 14.)  He also filed a habeas petition in the California Supreme Court, again raising various ineffective assistance grounds.  (Lodg. No. 16.)  On October 18, 2006, the California Supreme Court summarily denied the petition for review and the habeas petition.  (Lodg. Nos. 15, 17.)

Petitioner filed the Petition on March 18, 2008.

### III.   FACTS

As petitioner does not challenge the sufficiency of the evidence supporting his conviction, the following factual summary is taken from the California Court of Appeal's opinion on direct review after resentencing:

> [Petitioner] molested his daughter, K., beginning when she was three years old.  He would touch her "private area" in a rubbing motion both over and under her clothing.  He would also place his fingers inside her vagina.  The molestations continued until K. was seven years old.  During this time, [petitioner] attempted to insert his penis in her vagina, and he orally

3

1
2

copulated her at least once a week.  [Petitioner] told
his daughter "once or twice" not to tell her mother
what he was doing.

3
4
5
6

[Petitioner] stopped molesting his daughter for
about a year when the family moved back to Hawaii.
The molestations resumed when K. was in the sixth
grade and the family was back in California.  On one
occasion, [petitioner] showed his daughter a
pornographic video.  Finally, in April 2002, when K.
was 17, she disclosed the molestations to her family.

7
8
9

The family members confronted [petitioner], and
eventually he admitted the molestations.  A family
member thereafter called the police.  [Petitioner]
admitted to the authorities that he had repeatedly
molested his daughter.  [Petitioner] had also molested
his stepdaughter when she was a teenager.

10

(Lodg. No. 11 at 3-4.)

11

**IV.   PETITIONER'S CLAIMS**

12

1.   The trial court's imposition of consecutive sentences based

13

on facts not found by a jury beyond a reasonable doubt

14

violated petitioner's Sixth Amendment rights (Pet.

15

Memorandum ("Pet. Mem.") at 13-15 ("Claim One");

16

2.   The trial court's imposition of consecutive sentences based

17

on improper factors and inaccurate statements of fact

18

violated petitioner's Sixth Amendment rights (Pet. Mem. at

19

15-20) ("Claim Two"); and

20

3.   Petitioner was denied the effective assistance of counsel

21

by virtue of his trial counsel's failure to introduce

22

mitigating evidence and to object to the imposition of

23
24

consecutive sentences on various grounds (Pet. Mem. at 21-

32) ("Claim Three").

25

**V.   STANDARD OF REVIEW**

26

The review of petitioner's claims herein is governed by

27
28

provisions of the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA").[1]  *See* 28 U.S.C. § 2254; *see also Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).  Under AEDPA, a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2]  28 U.S.C. § 2254(d) ("Section 2254(d)"); *see Williams v. Taylor*, 529 U.S. 362, 402-03, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

The phrase "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."[3] *Lockyer*, 538 U.S. at 71-72.  However, a state court need not

------

[1]  Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[2]  In addition, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

[3]  The only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court. *Williams*, 529 U.S. at 412; *see also Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) (citing *id.*).  Thus, while circuit law may be "persuasive authority" in analyzing whether a state court decision was an unreasonable application of Supreme Court law, "only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003), *overruled in part on other grounds by Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).

cite the controlling Supreme Court cases in its own decision, "so long as neither the reasoning nor the result of the state-court decision contradicts" relevant Supreme Court precedent which may pertain to a particular claim for relief. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (*per curiam*).

A state court decision is "contrary to" clearly established federal law if the decision applies a rule that contradicts the governing Supreme Court law or reaches a result that differs from a result the Supreme Court reached on "materially indistinguishable" facts. *Williams*, 529 U.S. at 405-06. A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

A federal habeas court may not overrule a state court decision based on the federal court's independent determination that the state court's application of governing law was incorrect, erroneous, or even "clear error." *Lockyer*, 538 U.S. at 75. Rather, a decision may be rejected only if the state court's application of Supreme Court law was "objectively unreasonable." *Id.* In making that determination, the federal habeas court must "determine what arguments or theories supported or . . . could have supported the state court's decision . . . ." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011). The court must then "ask whether it is possible fairminded jurists could disagree

that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.*

In addition, a federal court's power to grant the writ of habeas corpus to a state inmate depends on the inmate's actually being "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3). Thus, if a federal court finds that the state court's holding was contrary to or an unreasonable application of clearly-established federal law, or was based on an unreasonable determination of the facts, "[a] federal court must then resolve the constitutional claim without the deference AEDPA requires." *Panetti v. Quarterman*, 551 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); *Frantz v. Hazey*, 533 F.3d 724, 739 (9th Cir. 2008). The court must apply a *de novo* standard of review in determining whether a constitutional violation has occurred. *Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008).

Finally, if the state court's decision was contrary to or an unreasonable application of Supreme Court law, or if the state court unreasonably determined the facts, the reviewing court must determine whether the error was harmful. Harmfulness is presumed conclusively if the error is "structural." Structural errors are errors that affect "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). Most other errors (termed "trial type" errors) are evaluated under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 623,

639, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).[4]  Under that
standard, habeas relief is available only where the error had a
"substantial and injurious effect or influence in determining
[the] jury's verdict."  *Brecht*, 507 U.S. at 637 (citing
*Kotteakos v. United States*, 328 U.S. 750, 66 S. Ct. 1239, 90 L.
Ed. 1557 (1946)).

## VI.  ANALYSIS

1.  <u>Petitioner is not entitled to habeas relief on Claim One</u>.

A.  <u>Background</u>.

As noted above, the trial court sentenced petitioner to
three years on Count One and two years on the nine remaining
counts.  The trial court ordered that petitioner serve the
sentences consecutively; thus, petitioner's total prison term
was 21 years.  (Lodg. No. 8 at 29.)

In imposing consecutive sentences, the trial court stated
the following:

> I think the – I think the biggest thing that's missed
> by the [*sic*] those who are recommending the leniency
> for Mr. Kanehe is that Mr. Kanehe was shown remarkable
> leniency in the manner in which this case was charged.
> He could have been charged with literally hundreds of
> counts of sexual molestation.  He has also previously

---

[4]  In *Brecht*, the Supreme Court, citing *Fulminante*, 499 U.S.
at 307, described trial error as error that "occur[s] during the
presentation of the case to the jury."  *Brecht*, 507 U.S. at 629
(internal quotations and citation omitted).   Trial error is
amenable to harmless error analysis because it "may . . . be
quantitatively assessed in the context of other evidence presented
in order to determine [the effect it had on the trial]."  *Id.*
(internal quotations and citation omitted).  "[S]tructural defects
in the constitution of the trial mechanism," such as the
deprivation of the right to counsel, "defy analysis by
'harmless-error' standards" and "require[] automatic reversal of
the conviction because they infect the entire trial process."  *Id.*
at 629-30 (internal citation omitted).

8

1

been shown leniency in selecting the low term.

2

With regards to – so the low term on Count I is the base term still of 3 years.

3

With regards to Counts II through X, I have considered the fact that those crimes were committed

4

at different times and at separate places, and that they were separate acts, they're [*sic*] objectives

5

beyond and independent of each other.

6

And for that reason, I have elected to sentence him consecutively as to Counts II through X. And that

7

would be one third of the mid-term, or 2 years. So that's 18 years consecutive to Count I of 3 years, for a total custody commitment of 21 years.

8

(*Id.*)

9

Citing *Cunningham v. California*, 549 U.S. 270, 127 S. Ct.

10

856, 166 L. Ed. 2d 856 (2007), *Apprendi v. New Jersey*, 530 U.S.

11

466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v.*

12

*Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403

13

(2004), petitioner contends that under the Sixth Amendment, he

14

had the right to have a jury determine the facts on which the

15

court relied in imposing consecutive sentences. Because the

16

court, not a jury, found those facts, petitioner argues, his

17

Sixth Amendment rights were violated. Petitioner is not

18

entitled to habeas relief on this claim.

19

B.   <u>Analysis</u>.

20

In rejecting this claim on direct review, the California

21

Court of Appeal[5] reasoned that in *People v. Black*, 35 Cal. 4th

22

1238 (2005), *abrogated on other grounds*, *Cunningham*, 549 U.S. at

23

24

    [5] Under the "look through" doctrine, where more than one state

25

court has adjudicated the petitioner's claims, the federal habeas court generally analyzes the last reasoned decision. *See Barker v.*

26

*Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v.*
*Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706

27

(1991) for presumption that later unexplained orders, upholding judgment or rejecting same claim, rest upon same ground as the

28

prior order). Thus, the Court will "look through" the California Supreme Court's denial of petitioner's petition for review to the Court of Appeal's opinion.

294, the California Supreme Court found that the judicial factfinding that occurs when a judge exercises its discretion to impose consecutive sentences does not implicate the defendant's Sixth Amendment jury trial rights.  (Lodg. No. 11 at 13.)  The Court of Appeal's holding was neither contrary to, nor an unreasonable application of, clearly-established federal law.

In *Apprendi*, the Supreme Court held that the Sixth Amendment requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond a prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490. In *Blakely*, the Supreme Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."  542 U.S. at 303 (emphasis in original).

In 2007, the Supreme Court held in *Cunningham* that by authorizing the judge, not the jury, to find facts exposing a defendant to an elevated upper term sentence, California's determinate sentencing law violated defendants' jury trial rights.  549 U.S. at 288-93.  In so finding, the Supreme Court explained that "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum."  *Id.* at 288.  Consequently, any fact permitting the imposition of an upper term sentence – other than facts reflected in the jury's verdict or admitted by the defendant – must be found beyond a reasonable doubt by the jury, not the judge.  *Id.* at 288-93.

In 2009, the Supreme Court determined that a judge's imposition of consecutive terms does not implicate the Sixth Amendment rights elucidated in *Apprendi* and its progeny. *Oregon v. Ice*, 555 U.S. 160, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009). The court reasoned that the historical role of the jury at common law did *not* encompass the determination of whether to impose consecutive sentences. *Id.* at 167-68. "Rather, the choice rested exclusively with the judge." *Id.* at 168. Accordingly, a judge's factfinding in imposing consecutive sentences does not encroach upon facts historically found by the jury, nor does it threaten "the jury's domain as a bulwark at trial between the State and the accused." *Id.* at 169.

Moreover, in *Ice*, the Supreme Court emphasized that *Cunningham*, on which *Ice* heavily relied (as does petitioner herein), did not control the case. "We had no occasion [in *Cunningham*] to consider the appropriate inquiry when no erosion of the jury's traditional role was at stake. *Cunningham* thus does not impede our conclusion that, as *Apprendi*'s core concern is inapplicable to the issue at hand, so too is the Sixth Amendment's restriction on judge-found facts." *Id.* at 170.

*Ice*, of course, post-dates the Court of Appeal's decision in petitioner's case. However, it amply makes clear that *Apprendi*'s rationale simply does not support the conclusion that the imposition of consecutive sentences based on judicial factfinding violates a defendant's Sixth Amendment rights. Thus, the Court must conclude that in rejecting Claim One, the California Court of Appeal reasonably applied then-existing Supreme Court precedent. Petitioner is thus not entitled to

11

habeas relief on Claim One.

2.  Petitioner is not entitled to habeas relief on Claim Two.

    A.  Background.

    At petitioner's sentencing, the trial court denied probation as follows:

> I'm afraid I have to disagree with [petitioner's wife] that he made one mistake. [Petitioner] made a mistake, then he made it again, and then he made it again, and then he made it again. And he not only did it over a period of years, but in a variety of places, both in this continent and Hawaii. This wasn't one mistake. This was a choice of sexual objects, as pedophiles do.
>
>      Inasmuch as the Court [of Appeal] has found that force was not involved, I think I have to consider the criteria effecting a grant of probation, that is, that nature and circumstances of this crime under . . . 4.414(a)(1) and (a)(3), the vulnerability of the victim, (a)(4), the fact that he inflicted physical and emotional injury, (a)(6), [petitioner] was an active participant, and (a)(8), the manner in which the crimes were carried out demonstrates planning on his part.
>
>      In mitigation, I've considered 4.414(b)(3), his willingness to comply with probation, (b)(5), the likelihood of the prisonment [*sic*] and the detriment that it will have on his life and his dependents, and (b)(6), the adverse collateral consequences to his life.      On balance, . . . it appears to me that probation should not be granted, and it is once again denied.

(Lodg. No. 8 at 28-29.)

    The trial court then ordered that petitioner's sentences be imposed consecutively, asserting that (1) petitioner had previously been shown leniency in that could have been charged with "literally hundreds of counts of molestation"; and (2) the crimes committed were separate acts, occurring at separate times, in separate places, and with independent objectives. (*Id.* at 28-29.)

Petitioner contends that in imposing consecutive sentences, the trial court "relied on aggravating factors which were not supported by the record." (Pet. Mem. at 16.) Specifically, petitioner contends that (1) there was no testimony that any acts took place anywhere outside the continent; and (2) there was no evidence beyond a reasonable doubt of uncharged crimes. (*Id.* at 16-19.) In relying on such facts, petitioner argues, the trial court violated petitioner's Sixth Amendment right to be informed of the charges against him, his due process right to have the charges against him proved beyond a reasonable doubt, and his due process right to have a sentencing court "exercis[e] its informed discretion." (*Id.* at 15, 16-20.) He further contends that to the extent any of the uncharged acts occurred prior to 1988, the trial court violated the Ex Post Facto Clause. (*Id.* at 20.) Petitioner is not entitled to habeas relief on these claims.

B.   <u>Analysis</u>.

In rejecting this claim on direct review, the California Court of Appeal reasoned first that petitioner had waived the claim on appeal by failing to object in the trial court. (Lodg. No. 11 at 9-11 (citing, *inter alia*, *People v. Scott*, 9 Cal. 4th 331, 353-355 (1994)).) Petitioner's failure to raise his constitutional claims during trial is an independent state law ground that is adequate to support the state court's judgment. *Davis v. Woodford*, 384 F.3d 628, 653-54 (9th Cir. 2004) (finding Confrontation Clause claim procedurally barred where California appeals court refused to hear claim for first time on appeal); *Vansickel v. White*, 166 F.3d 953, 957 (9th Cir. 1999).

Therefore, his claim is procedurally barred, and the Court need not consider it unless petitioner can show (1) cause and prejudice to excuse the default; or (2) that a fundamental miscarriage of justice would occur if the Court did not consider his claim. *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Schlup v. Delo*, 513 U.S. 298, 316, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

Petitioner shows neither. He argues only that ineffective assistance of counsel caused the default. (Trav. at 13-14.) However, as discussed below, the Court finds that counsel's alleged error in failing to raise petitioner's claims does not constitute ineffective assistance. Therefore, it cannot constitute cause for petitioner's procedural default. *Cook v. Schriro*, 539 F.3d 1000, 1027 (9th Cir. 2008). Accordingly, the Court need not consider this claim.

Even if petitioner's claim were not procedurally defaulted, however, he would not be entitled to habeas relief. The Court of Appeal found, in the alternative, that the trial court did not abuse its discretion in imposing consecutive sentences. The court asserted that under rule 4.425(a)(3) of the California Rules of Court, a court may impose a consecutive sentence when the crimes at issue were committed at different times or in separate places, such that they did not constitute a single period of aberrant behavior. (Lodg. No. 11 at 11.) The Court of Appeal found that the trial court relied on this factor in imposing consecutive sentences and that the record supported the trial court's finding. (*Id.*)

The appellate court noted, in the alternative, that

consecutive sentences may be supported by a single factor in aggravation.  The court reasoned that the factors in aggravation cited by the trial court in denying probation (the victim's vulnerability, the fact that the crimes were planned, and that petitioner took advantage of a position of trust) also supported consecutive sentencing.  (*Id.* at 11-12 (citing Cal. R. Ct. 4.421(a)(3), (a)(8), (a)(11), and *People v. Davis*, 10 Cal. 4th 463, 552 (1995); *see also* Cal. R. Ct. 4.425(b).)  Finally, the Court of Appeal rejected petitioner's contention that the trial court relied on uncharged crimes and alleged wrongful acts occurring in Hawaii, finding that the trial court relied on those facts in denying probation, not imposing consecutive sentences.  And even if the trial court had relied on the challenged facts, the court's statements "indicated that it is not reasonably probable that a more favorable sentence would be imposed on remand."  (Lodg. No. 11 at 12 (citing *Davis*, 10 Cal. 4th at 552).)

    Although the state court did not cite federal authorities in rejecting petitioner's claim (*see* Lodg. No. 11 at 9-13), its decision was not contrary to clearly-established federal law.  Whether or not California law supported the trial court's imposition of consecutive sentences does not, in itself, raise a cognizable habeas claim.  Generally, "federal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)).  Moreover, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *McGuire*, 502 U.S. at 68; *see also Cacoperdo v.*

*Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus."); *accord Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) (holding that "[b]ecause the trial court actually had absolute discretion to impose either consecutive or concurrent sentences[,]" alleged abuse of discretion in choosing consecutive sentences could not form basis for federal habeas relief).

Nonetheless, a state court's misapplication of state sentencing law may violate due process, but only where "[the error] is so arbitrary or capricious as to constitute an independent due process" violation. *Richmond v. Lewis*, 506 U.S. 40, 50, 113 S. Ct. 528, 121 L. Ed. 2d 411 (1992) (internal quotation and citation omitted); *see also McGuire*, 502 U.S. at 67, 69; *see also Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). ("[a]bsent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief").

Viewing the record with the deference AEDPA requires, the Court finds that no fundamental unfairness occurred.  K. testified that when she was between the ages of three and seven, her father molested her at least once a week.  (RT 15-22.)  The molestation occurred when the family lived in Murrietta.  (RT 13-14.)  No molestation occurred when the family lived in Hawaii for approximately a year and a half, but the molestation resumed when the family moved back to Murietta, occurring at least twice a month and in two different residences.  (RT 22-26, 26-30.)

Although K.'s testimony is not entirely clear at this point, it appears as though the molestation continued through the eighth grade. (*See* RT 27-20.)  In addition, the molestation occurred when her mother was not in the house or was asleep, and her father told her not to tell her mother. (RT 15-17, 20, 26-27, 30.)

From K.'s testimony, it is reasonable to conclude that the crimes occurred at different times and at different places, such that they did not form a single period of aberrant behavior. Under the Court of Appeal's interpretation of state law, this factor, in itself, would support consecutive sentencing. (Lodg. No. 11 at 11; *see also* Cal. R. Ct. 4.425(a)(3).)  Moreover, it is reasonable to conclude that in molesting his own daughter (and concealing the molestation from his wife), petitioner abused a position of trust, planned the crimes, and chose a particularly vulnerable victim.  Under the Court of Appeal's interpretation of state law, each of these factors in aggravation, in itself, also supported consecutive sentencing. (Lodg. No. 11 at 11-12; *see also* Cal. R. Ct. 4.421(a)(3), (a)(8), (a)(11), Cal. R. Ct. 4.425(b); *see also Davis*, 10 Cal. 4th at 552)).

The Court must defer to the Court of Appeal's interpretation of California law with respect to the factors that support consecutive sentencing.  The Court must also defer to the Court of Appeal's assertion that only one factor in aggravation is needed to support consecutive sentencing. *Hicks v. Feiock*, 485 U.S. 624, 630 & n.3, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988) (federal habeas court is not at liberty to

17

disregard California Court of Appeal's rulings on state law when California Supreme Court has denied review).  In turn, given that the record amply supports the factors the Court of Appeal cited, the Court must conclude that the trial court did not misapply state sentencing law and no fundamental unfairness occurred.

As to petitioner's claim that the trial court erred in referring to acts occurring in Hawaii, the record supports the Court of Appeal's finding that the trial court cited those alleged facts in denying probation, not imposing consecutive sentences.  (*See* RT 28-29.)  The trial court did refer to uncharged acts in the context of imposing consecutive sentences. However, even if that reference somehow violated petitioner's due process right to have those crimes proven beyond a reasonable doubt before receiving consecutive sentences, any error was harmless in light of every other factor that, in itself, supported consecutive sentences.[6]  *See Brecht*, 507 U.S. at 637; *see* discussion, *supra*.

Finally, the Court of Appeal did not explicitly address

---

[6]   Petitioner asserts that the trial court found that petitioner's crimes constituted "separate acts" – a criterion, petitioner asserts, that applies only when the crimes are violent. Since the Court of Appeal had previously ruled that petitioner's crimes did not include violence, petitioner argues, the trial court erred in relying on "separate acts" to impose consecutive sentences. (Pet. Mem. at 24-25 (citing Cal. R. Ct. 4.425(a)(2)).) Even if petitioner were correct, he would not be entitled to relief. The "different times" criterion (Cal. R. Ct. 4.425(a)(3)) was supported by the record and, in itself, constituted a sufficient basis on which to impose consecutive sentences. *See* discussion, *supra*. Thus, even if the trial court erred in finding that the crimes were "separate acts," any error was harmless. *See Brecht*, 507 U.S. at 637.

18

petitioner's Ex Post Facto Clause claim.  Nor did it address petitioner's claim that he was not notified that he would have to defend against pre-1988 crimes.  (*See* Lodg. No. 11 at 9-12.) However, these claims are unavailing.[7]  K. was born in October of 1984.  She testified that the molestation began when she was three.  (RT 14-18.)  In theory, therefore, some of the acts she described could have taken place in late 1987.  However, she also testified that petitioner molested her at least once a week until she was seven – *i.e.*, most if not all of the alleged wrongdoing occurred after 1987.  (*See* RT 15-22.)  More to the point, the prosecutor neither charged petitioner with acts occurring in 1987, nor relied on such alleged acts at trial. Nor did the trial court rely on pre-1988 acts in convicting and sentencing petitioner.  (CT 104-08; RT 69-73, 75-76; Lodg. No. 8 at 28-29.)

Thus, even if relying on pre-1988 acts would have violated the Ex Post Facto and the Sixth Amendment (an issue the Court need not decide), no such reliance occurred in petitioner's

---

[7]  The Ex Post Facto Clause applies to changes in law that retroactively alter the definition of a crime or retroactively increase the punishment for criminal acts.  *California Dep't of Corr. v. Morales*, 514 U.S. 499, 504, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995).  In determining whether the challenged statute or regulation is constitutional, the court must determine, *inter alia*, whether the law is retrospective, *i.e.*, applies to events occurring before its enactment.  *Miller v. Florida*, 482 U.S. 423, 430, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987).  As near as the Court can understand it, petitioner contends that punishing him on the basis of conduct occurring prior to 1988 would involve the retrospective application of an extension of the statute of limitations on molestation crimes.  (*See* Pet. Mem. at 20 (citing *Stogner v. California*, 539 U.S. 607, 123 S. Ct. 2446, 156 L. Ed. 2d 544 (2003)).)

case.   Thus, the Court of Appeal reasonably rejected both claims.   *See Richter*, 131 S. Ct. at 786 (where state court denies claim on merits, but does not state its reasons for doing so, habeas court must determine what reasonable arguments "could have supported" denial).

In sum, petitioner is not entitled to habeas relief on Claim Two.

3.   <u>Petitioner is not entitled to habeas relief on Claim Three</u>.

A.   <u>Background</u>.

In Claim Three, petitioner contends that his trial counsel rendered deficient performance by committing a number of alleged errors, including, *inter alia*, (1) failing to object to the trial court's reference to uncharged acts and acts occurring in Hawaii; (2) failing to object to the trial court's conclusion that the crimes were separate acts; (3) failing to introduce available mitigating evidence; (4) failing to object to errors in the presentencing report; (5) failing to object under *Blakely*; and (6) making statements against his client's interest.   As a result of counsel's alleged deficient performance, petitioner argues, the trial court imposed consecutive sentences.   Petitioner argues that he thus received ineffective assistance of counsel in violation of the Sixth Amendment.   (Pet. Mem. at 21-32.)   Petitioner is not entitled to habeas relief on this claim.

B.   <u>Analysis</u>.

In rejecting petitioner's ineffective assistance of counsel

claim on direct review and habeas review, the Court of Appeal[8] found that petitioner could not demonstrate that he suffered prejudice as a result of his counsel's alleged ineffective assistance.   The court reasoned that (1) the trial court considered mitigating factors and weighed the issue of whether probation was warranted in the case; and (2) the trial court properly sentenced petitioner to consecutive terms based on the fact that the crimes occurred at different times and in different places.   Thus, there was "no reasonable probability that [petitioner] would have received a more favorable outcome" if he had made the objections or introduced the evidence cited by petitioner. (Lodg. No. 11 at 13-16 (citing, *inter alia*, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).)

     A two-step analysis governs claims of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687.   First, a petitioner must prove that his attorney's representation fell below an objective standard of reasonableness. *Id.* at 687-88, 690.   The petitioner will meet this initial burden only if

_____

[8]   The "look through" doctrine applies to the California Supreme Court's denial of petitioner's ineffective assistance claims on direct review. *See supra* n.5.   However, as an unexplained denial of a habeas petition is an adjudication on the merits (in contrast to the denial of a petition for review), the "look through" doctrine may not necessarily apply to the California Supreme Court's denial of petitioner's ineffective assistance claims on habeas review. *See Williams v. Cavazos*, 646 F.3d 626, 636-37 (9th Cir. 2011).   Nonetheless, the Court will look to the California Court of Appeal's reasoned decision in determining whether any reasonable arguments or theories "could have supported" the California Supreme Court's silent denial of the habeas petition. *See Richter*, 131 S. Ct. at 786.

counsel's acts and omissions, examined within the context of all the surrounding circumstances, were outside the "wide range" of professionally competent assistance. *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).  In addition, the standards created by *Strickland* and AEDPA are "highly deferential," and when they apply in tandem, "review is doubly so." *Richter*, 131 S. Ct. at 788 (internal quotation marks omitted).

Second, a petitioner must show that he was prejudiced by demonstrating a reasonable probability that, but for his counsel's errors, the result would have been different. *Strickland*, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792.  A petitioner must prove both deficient performance and prejudice.  A court may consider either prong of the test first, and need not address both if the petitioner fails one. *Strickland*, 466 U.S. at 697.

Petitioner cannot demonstrate prejudice.  As discussed above, the court finds no basis for concluding that the imposition of consecutive sentences violated petitioner's Sixth Amendment, due process, or Ex Post Facto Clause rights. *See* discussion, *supra*.  In light of the fact that the crimes occurred at separate times and in separate places – not to mention the other factors supporting consecutive sentences – it is highly unlikely that petitioner would have received a different outcome had counsel taken the actions petitioner

cites.[9]  *See* discussion, *supra*.  The Court of Appeal's decision, therefore, was neither contrary to, nor an unreasonable application of, clearly-established federal law.

Accordingly, petitioner is not entitled to habeas relief on Claim Three.

### VII.  CONCLUSION

For the reasons stated above, the Petition for Writ of Habeas Corpus is DENIED.

DATED: August 9, 2012

_____
**DEAN D. PREGERSON**
**UNITED STATES DISTRICT JUDGE**

---

[9]  While the Court of Appeal based its decision on the prejudice prong, the Ninth Circuit has observed that "the failure to take a futile action can never be deficient performance." *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996); *See also Seessoms v. Runnels*, 650 F.3d 1276, 1291 (9th Cir. 2011) ("Because we find no basis in the record from which to conclude that a *Mosley* motion could have succeeded, we conclude that Sessoms's trial counsel did not perform ineffectively in choosing not to pursue it").